STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re: Cushing Family, LLC | } | |
| Site Plan Application | } | Docket No. 61-4-09 Vtec |
| (Appeal of Cushing) | } | |
|  | } | |

Decision and Order on Pending Motions

Appellant-Applicant Cushing Family, LLC (Applicant) appealed from a decision of the Development Review Board (DRB) of the Town of Salisbury denying site plan approval for a proposed retail store, repair service center, and rental and storage buildings. Applicant is represented by Karl W. Neuse, Esq. and Benjamin W. Putnam, Esq.; the Town is represented by James F. Carroll, Esq.

Applicant has moved for partial summary judgment on Questions 5, 15, and 16 of its Statement of Questions, relating to which version of the zoning ordinance applies to this application, and has also moved to amend its application for site plan approval. If the Court should conclude that the application was considered under the incorrect version of the zoning ordinance, the Town has moved to remand the matter to the DRB. The following facts are undisputed unless otherwise noted.

The property at issue in this appeal is located at the address of 991 U.S. Route 7, in a Commercial zoning district in the Town of Salisbury. On Tuesday, December 23, 2008, Applicant delivered its application for Zoning Permit No. 08-64 (zoning permit application) to the Town offices. The application proposed to remove an existing building and garage, and to construct and operate a "Retail Store/Repair Service Center/Rental and Storage Building," on Applicant's property. The Zoning Administrator did not personally receive and process the application until Monday, December 29, 2008. The Zoning Administrator responded to the filing of the zoning

1

permit application by a letter to Mr. Bradford Cushing (c/o Applicant) dated December 31, 2008.  At this time, the Town of Salisbury Zoning Regulations enacted in 2007 (2007 Regulations) were in effect.

The letter stated that "the land is zoned for commercial use and the uses you are proposing are permitted," and went on to list three prior requirements that would have to be filed before the Zoning Administrator could act on the zoning permit application, citing to sections of the 2007 Regulations for each such requirement.[1]  These three requirements consisted of documentation of an approved or complying wastewater system under § 320(5) of the 2007 Regulations; additional permit fees under § 320(1) of the 2007 Regulations (as each of the separate proposed buildings required a separate permit); and obtaining "site development plan review and approval" (site plan approval) from the DRB under § 350, as required by § 320(6) of the 2007 Regulations.

The letter "encouraged" Applicant to "appear before the DRB to present [the] proposal," and provided the application form necessary for Applicant to file with the DRB, together with information about the required documentation and filing fee for the

---

[1]  Under the 2007 Regulations, no development may commence unless a zoning permit is issued by the Zoning Administrator. 2007 Regulations § 310.  To obtain a zoning permit, an applicant must submit a completed application to the Zoning Administrator. Id.  If the application is for a proposal that only requires a zoning permit, the Zoning Administrator may proceed to issue or deny the permit, depending on whether it meets the dimensional and district requirements in the zoning ordinance.  Otherwise, if the application is for a proposal that requires a discretionary ruling from the DRB, such as conditional use approval, see id. § 342, or site plan approval, see id. § 350, the Zoning Administrator must first refer the matter to the DRB for any approvals necessary, before the Zoning Administrator may rule on the zoning permit.  Id. § 310; see also Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 523 (1999) (Upon receiving a zoning permit application, a zoning administrator has three options: grant the permit, deny the permit, or forward it to the appropriate municipal panel for necessary approvals).  Only after the DRB has issued all necessary approvals and all other requirements are met, may the Zoning Administrator take the "final step" of issuing the zoning permit.  Appeal of Ghia, No. 31-2-03 Vtec, slip op. at 2 (Vt. Envtl. Ct. Nov. 19, 2003) (Wright, J.)

DRB proceeding. The letter informed Applicant that the Zoning Administrator would "hold [the] permit and application in abeyance until [Applicant] or the [DRB] makes a final decision."

On January 5, 2009, public notice was published in the <u>Addison Independent</u> for the first public hearing before the Selectboard on proposed revisions to the Town's Unified Development Regulations (2009 Proposed Regulations), to be discussed at the January 20, 2009 Selectboard meeting.

Sometime between January 7, 2009, and January 13, 2009, Applicant delivered to the DRB its Site Plan Application No. 2009-02 (site plan application) and the required filing fee. Notations on the application form indicate that the "[m]ap, names & addresses" were received on January 2, 2009; that the $75 filing fee was received on January 7, 2009; and that the application as a whole was considered complete or marked as "received" on January 13, 2009.[2] Applicant simultaneously submitted, as part of the site plan application: a map and a list of adjacent property owners, two design drawings, and a cover sheet from a state water supply and wastewater disposal permit issued to Applicant in 2007 for an earlier proposal.

The DRB held its first hearing on the site plan application on February 25, 2009. As reflected in the meeting minutes (February 2009 DRB Minutes), the DRB discussed the issue of whether the application should be reviewed under the 2007 Regulations or 2009 Proposed Regulations. As reflected in the minutes, the Zoning Administrator "stated that the process started in late December and proceeded under the [2007] Regulations." February 2009 DRB Minutes, at 1. Because the DRB planned to conduct a subsequent site visit and requested a "better site plan" from Applicant, the DRB voted to continue the hearing at its March 18, 2009 meeting. <u>Id</u>.

_____

[2] Although the parties dispute the date that the site plan application was "received" or "submitted," the discrepancies between their positions do not affect the resolution of the present motions.

3

The hearing reconvened as planned on March 18, 2009. As reflected in the minutes for that meeting (March 2009 DRB Minutes), the DRB again discussed whether the site plan application should be reviewed under the 2007 Regulations or the 2009 Proposed Regulations. At that meeting, the members of the DRB agreed that the site plan application was not complete until the filing fee was received, which was either on January 7, 2009, or January 13, 2009. At the close of the meeting, the DRB entered into deliberative session.

On March 24, 2009, the DRB issued its written decision denying site plan approval for the project (DRB Decision). The DRB denied the application on the basis that "it should have been heard under the New Unified Regulations as referenced in 24 VSA. §4449(d)." DRB Decision, at 2. The DRB decision noted that the "notice of hearing on the New Unified Regulations came out in the paper on January 5, 2009," and determined that the application submitted for site plan approval was not complete until after that date. Applicant filed the present appeal with this Court on April 20, 2009.

On May 29, 2009, the Selectboard held a special meeting on the 2009 Proposed Regulations. The public notice for the special Selectboard meeting stated that the Selectboard was to "[r]eview and consider unified regulations in light of advice from the League of Cities and Towns"; no other information regarding the 2009 Proposed Regulations was included in the public notice. Facts are disputed as to whether or when the public notice of the May 29, 2009 special Selectboard meeting was posted.[3]

---

[3] Although the affidavit of the DRB Clerk states that the public notice for the May 29, 2009 meeting had been posted "in the Town Office, at the Town Post Office[,] and at the Town library prior to the meeting," Cameron Aff. ¶ 13 (Aug. 13, 2009), Mr. Cushing "examined the public notice board in the Town of Salisbury Offices on the afternoon of May 28, 2009[,] and observed that no notice of the May 29, 2009 Selectboard meeting had been posted at that time." Cushing Aff. ¶ 6 (Sept. 10, 2009).

As reflected in the minutes of the May 29, 2009 special Selectboard meeting, the Selectboard voted to "adopt the Unified Development Regulations as written as 'Interim' Regulations" (2009 Interim Regulations).

Questions 15 and 16: Zoning Permit Application

Applicant has moved for summary judgment on Questions 15 and 16 of the Statement of Questions, as to whether Applicant has vested rights under the 2007 Regulations with regard to the uses proposed in its December 2008 zoning permit application.

Although this is an appeal only of the DRB's decision regarding Applicant's site plan application, the Zoning Administrator made certain determinations in his December 31, 2008 letter as to the use categories applicable to the project and what kinds of additional approvals were necessary before he could rule on the zoning permit application. The Zoning Administrator's December 31, 2008 letter was not appealed, and therefore became final. See 24 V.S.A. § 4472(d).

As those determinations were made prior to January 5, 2009, Applicant has vested rights to have the proposal considered under the use categories in the 2007 Regulations, specifically, as stated in the Zoning Administrator's letter, that "the land is zoned for commercial use" and that the proposed uses are classified as "permitted" uses under the 2007 Regulations.[4]

The December 31, 2008 letter explained that Applicant would have to obtain site plan approval from the DRB before the Zoning Administrator could rule on the zoning

---

[4]  That is, if the 2009 Regulations make the proposal a conditional use requiring conditional use approval, as suggested in the minutes of the February and March DRB meetings, Applicant is not required to obtain conditional use approval for the project, because the types of other approvals required as a prerequisite for zoning permit under § 320(6) of the 2007 Regulations were fixed as of the December 31, 2008 letter.

permit application, and further explained how to apply to the DRB for such approval. The fact that Applicant's application to the DRB for site plan approval was filed after January 5, 2009, does not act retroactively to alter the effect of the Zoning Administrator's December 31, 2008 letter.

Therefore, summary judgment must be GRANTED to Applicant on Questions 15 and 16, in that the December 31, 2009 letter gave Applicant vested rights under the 2007 Regulations as to the use categories applicable to the project and what kinds of additional approvals were necessary.

Question 5: Regulations Applicable to DRB Consideration of Site Plan

Question 5 of the Statement of Questions asks whether Applicant has "a right to have the Site Plan Application reviewed under the 2007 Regulations," as opposed to under the 2009 Interim Regulations adopted on May 29, 2009.

The Selectboard's January 5, 2009 publication of the public notice for the first public hearing on the 2009 Proposed Regulations triggered 24 V.S.A. § 4449(d). That provision states, in part:

> If a public notice for a first public hearing . . . is issued . . . by the local legislative body with respect to the adoption or amendment of a bylaw . . . , the administrative officer, for a period of 150 days following that notice, shall review any new application filed after the date of the notice under the proposed bylaw or amendment and applicable existing bylaws and ordinances.

24 V.S.A. § 4449(d). Since the site plan application was not submitted until some time between January 7, 2009, and January 13, 2009, after the public notice was published, it should have been considered by the DRB under the 2009 Proposed Regulations because the review occurred within the 150-day window mandated by 24 V.S.A. § 4449(d).

6

The fact that the zoning permit application for the project was submitted prior to the public notice, which gave Applicant vested rights under the 2007 Regulations as to the use categories applicable to the project and what kinds of additional approvals were necessary, does not change this result. Once the zoning permit application was received, the Zoning Administrator correctly noted that the project required site plan approval from the DRB before the zoning permit could be acted upon, and referred Applicant to the DRB to apply for site plan approval. See supra note 1.

As discussed above, before the Zoning Administrator may rule on a zoning permit application, he must first refer the matter to the DRB for any approvals necessary under the zoning regulations. See Wesco, 169 Vt. at 523. The Vermont Supreme Court has explained that submission of one type of application, which vests an applicant's rights under the regulations in effect as to that application, does not also give the applicant vested rights as to applications later submitted under a new set of regulations. See In re Taft Corners Assocs., Inc., 171 Vt. 135, 139–140 (2000) (holding that a subsequent zoning permit application did not vest at the time the applicant submitted a prior subdivision application; instead, the applicant's rights vested for each application separately at the time that each was individually submitted); see also Appeal of Jolley Assocs., No. 198-11-03 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 11, 2005) (Wright, J.) (stating that applications submitted for two separate approvals, specifically site plan and conditional use approval, are "two types of applications and their review processes are separate and distinct" (citing In re Champlain Oil Co., 2004 VT 44, ¶17; Taft Corners, 171 Vt. at 139–140)). Therefore, Applicant's submission of the zoning permit application prior to the public notice did not vest any rights to have the later-filed site plan application reviewed under the 2007 Regulations.

The DRB should have conducted a substantive review of the project's site plan application under the 2009 Proposed Regulations, because the application was submitted within the 150-day time period provided in § 4449(d). However, although

7

the DRB evidently realized that the application "should [be] heard under the New Unified [Development] Regulations," it did not proceed to do so. DRB Decision, at 2. Rather, it denied the application for site plan approval without ruling on its merits.

Even in a de novo appeal, the Court acts in an appellate capacity to decide issues that divide the parties after the DRB has ruled in the first instance. See In re Lathrop Ltd. P'ship II, No. 210-9-08 Vtec, slip op. at 4 (Vt. Envtl. Ct. Aug. 14, 2009) (Durkin, J.) (The Vermont Supreme Court has "cautioned against a review on appeal of land use issues that had not first been presented for consideration by the municipal panel below." (citing Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 13 (1989)). Therefore, regardless of whether Applicant now seeks to amend the site plan application, and regardless of the scope of that amendment, the DRB should consider the merits of the site plan application under the applicable regulations in the first instance. Therefore, the Town's Motion to Remand (found in the Town's response to Appellant's Motion to Amend the Site Plan Application) is GRANTED.

On remand, it will be for the DRB to determine in the first instance whether to apply the 2009 Regulations, whether the 2009 Interim Regulations were properly adopted, and, if not, what Regulations to apply to the site plan application.

Applicant's Motion to Amend

Applicant also has moved to amend its site plan application. Because the Court is not ruling on the application, but is instead remanding it to the DRB, it will be for the DRB to decide in the first instance whether to consider any changes to the site plan. Applicant's Motion to Amend has therefore become moot.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Applicant's Motion for Summary Judgment is GRANTED in Part and DENIED in Part, as discussed above, and the Town's Motion to Remand is GRANTED, concluding this appeal.

Done at Berlin, Vermont, this 17th day of December, 2009.

_____
Merideth Wright
Environmental Judge

9